# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brooke Schweitzer,<br><br>        Plaintiff,<br><br>v.<br><br>Old Republic General Insurance Company, et al.,<br><br>        Defendants. | No. CV-24-00440-TUC-SHR (JR)<br><br>**REPORT & RECOMMENDATION** |

Before the Court are three motions. First is Defendants Old Republic General Insurance Company and Gallagher Basset Services, Inc.'s Motion to Strike Testimony of Elliott Flood (Doc. 34), Defendants' Motion for Summary Judgement (Doc. 35), and Plaintiff Brooke Schweitzer's Motion to Deny Defendants' Motion for Summary Judgment for Failure to Comply with Federal Rule of Civil Procedure Local Rule 56.1(a) (Doc. 42). For the following reasons this Court recommends the district court grant the Defendants' Motion for Summary Judgment, deny the Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment, and deny the Defendants' Motion to Strike Testimony as moot.

## I.   Background

On July 22, 2022, Plaintiff Brooke Schweitzer injured her left shoulder through the course of her employment at Life Care Centers of America. On August 22, 2022, Plaintiff reported her injury to her employer and made a workers' compensation claim. On August 29, 2022, Plaintiff's employer informed Defendant Old Republic, its workers'

compensation carrier, and Defendant Gallagher, Old Republic's third-party administrator, of Plaintiff's claim. On October 17, 2022, after investigating Plaintiff's claim. Defendant Gallager sent a letter advising Plaintiff of an intent to deny the claim. On October 27, 2022 Defendant Gallagher received a notice of claim from the Industrial Commission of Arizona ("ICA"). On November 4, 2022, a dispute was timely filed.

On November 18, 2022, Plaintiff underwent an independent medical exam ("IME") with Patrick Bays, D.O. Dr. Bays questioned that Plaintiff suffered a workplace injury but stated that she may have had a temporary exacerbation to a non-work injury. On January 27, 2023, Defendant Gallagher accepted a temporary exacerbation.

On April 27, 2023, after hearing, an ICA Administrative Law Judge issued a final order awarding Plaintiff medical, surgical, and hospital benefits, as well as temporary total or temporary partial disability compensation benefits from July 22, 2022 until Plaintiff's condition becomes medically stationary. On July 19, 2023, Plaintiff having not been paid benefits, her workers' compensation attorney requested a hearing with the ICA pursuant A.R.S. § 23-1061(J). At some point prior to September 28, 2023, Defendants issued payment to Plaintiff in full. On November 1, 2023, Plaintiff filed the Complaint.

A. The Complaint

In her complaint Plaintiff asserts two claims for relief. (*See* Doc. 1-1 at 23-31.) In Count One, Plaintiff asserts that Defendant Old Republic, by and through its representative Defendant Gallagher, breached the implied covenant of good faith and fair dealing arising out of its obligations to Plaintiff, as an insurer under the Arizona Workers' Compensation Act. (*Id*. at 29.) In Count One, Plaintiff alleges that Old Republic breached its duty by: (1) intentionally denying benefits without a reasonable basis; (2) intentionally denying benefits without conducting an adequate investigation; (3) denying and delaying benefits with the knowledge of a lack of a reasonable basis and failing to adequately investigate whether such denial was supported by a reasonable basis; (4) failing to give at least equal consideration to Plaintiff's interests as to the Defendant's financial interests; (5) unreasonably interpreting its obligations under the Act in order to delay, decrease, and deny

benefits; and (6) failing to adopt and implement reasonable standards for investigation in evaluating benefits due under a claim. (*Id*. at 29-30.) In Count Two, Plaintiff asserts that Defendant Gallagher aided and abetted Defendant Old Republic in committing bad faith against Plaintiff. (*Id*. at 30.)

**II.      Plaintiff's Motion to Deny Motion for Summary Judgment should be denied.**

Plaintiff moves the Court to deny Defendants' Motion for Summary Judgment for violating Local Rule 56.1(a). (Doc. 42.) Plaintiff argues that because Defendant failed to attach a separate statement of facts attached pursuant to Local Rule 56.1(a) and instead embedded the facts within their Motion (*see* Doc. 35 at 2-5), the Defendant's Motion should be denied. (Doc. 42 at 1-2.) However, the Scheduling Order governing the litigation in this case directs in relevant part:

> Local Rule of Civil Procedure 56.1 is suspended, except for subsection (d). The Court will decide summary judgment motions under Federal Rule of Civil Procedure 56 only. The parties **may not file separate statements of facts or separate controverting statements of facts, but instead must include all facts in the motion, response, or reply itself**. All evidence to support a motion or response must be attached to the motion or response. The evidence may include only relevant excerpts rather than full documents. No new evidence may be submitted with a reply. A reply may cite only evidence attached to the motion or response. No party shall presume that the Court will scour the record for facts or theories that might support either party's case. *See Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994).

(Doc. 17 ¶5(c) (emphasis added).) Accordingly, the Defendant's Motion for Summary Judgment is the correct format pursuant to the scheduling order in this case, and Plaintiff's Motion (Doc. 42) should be denied.

However, the scheduling order continues:

> The Court will rely solely upon the attached evidence to verify facts asserted in the motion, response, or reply. Each citation to evidence to support a fact must include a pin citation to at least one page that proves that fact. **Because no separate controverting statement of facts will be permitted**, the responding party must carefully address all material facts raised in the motion. Likewise, the reply must carefully address all material facts raised in the response. Any fact that is not

addressed may be deemed by the Court to be uncontested.

(Doc. 17 ¶5(c) (emphasis added).) Upon review of the Plaintiff's filings, she filed an additional separate statement of facts (Doc. 40-1) and a controverting statement of facts (Doc. 40-2) both in violation of Local Rule 56.1(a) and the scheduling order. While this Court does not recommend it, the district court may in its own discretion impose sanctions, including the dismissal of the case, for Plaintiff's failure to comply with a court order. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992).

For the foregoing reasons, this Court recommends the district Court deny Plaintiff's Motion to Deny Defendant's Motion for Summary Judgment (Doc. 42).

### III.    Defendants' Motion for Summary Judgment should be granted.[1]

Defendants move for summary judgment as to both counts of the complaint. Defendant Old Republic moves for summary judgment as to Count One arguing that there was a reasonable basis for the denial of Plaintiff's workers' compensation claim, that Plaintiff failed to establish the Defendants knowingly and intentionally acted without a reasonable basis, and the delay in payment of was caused by Plaintiff's failure to provide required documentation. (Doc. 35 at 14.) Next, Defendant Gallagher Bassett argues that because Plaintiff fails to show evidence for a separate tort in addition to the underlying bad faith claim it is entitled to summary judgment as a matter of law as to Count Two. For the following reasons this Court recommends granting Defendants' Motion.

A.  Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate

---

[1]    The Parties have requested oral argument. (*See* Docs. 35, 40.) Because oral argument will not aid the Court's decision, the Parties' request is denied. *See* LRCiv 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

the absence of a genuine issue of material fact. *Id*. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Id*. at 252. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id*. at 255. In reviewing the evidence, the court need only consider the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

A movant is entitled to judgment as a matter of law against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. In *Celotex*, the Supreme Court explained: "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. at 322–23.

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient...." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003).

### B. Evidentiary Issues and Factual Disputes

Within Plaintiff's controverting statement of facts, she objects to one of Defendants' facts, and controverts ten others.[2] (*See* Doc. 40-2.) First, Plaintiff objects to the assertion that when initially questioned by an employer representative she did not know what specific incident or event caused her injury on the grounds that such statement is hearsay. (*Id*. at 2.) However, a statement made by an opposing party and offered against the same party, such as Plaintiff's statement to her employer here, is not hearsay. Fed. R. Evid. 8(d)(2)(A). Accordingly, Plaintiff's objection will be overruled. Plaintiff's remaining factual disputes, if material, will be addressed individually as the corresponding facts are recited in the following subsection.

Defendants object to nearly the entirety of Plaintiff's statements of fact for various reasons. (*See* Doc. 49 at 8-11.) First, Defendants object to 20 different paragraphs[3] of Plaintiff's statement of facts because they allege those paragraphs contain sentences with no citation to underlying supporting evidence. (Doc. 49 at 8.) Upon review, Plaintiff does not cite evidence in accordance with the Court's Scheduling Order ("[e]ach citation to evidence to support a fact must include a pin citation to at least one page that proves that fact," (Doc. 17 ¶5(c)), nor does she utilize any other known convention of legal citation, and instead simply lists multiple citations at the end of each paragraph without designating to which factual assertion the corresponding evidence belongs. (*See generally* Doc. 40-1.)

Next, Defendants object to six paragraphs[4] which they contend contain conclusory legal opinions. (Doc. 49 at 8-9) Upon review, the last sentence of Plaintiff's Paragraph 11—that Defendants were required to pay wages owed within 30 days of the final Industrial Commission decision—is an improper and unsupported legal assertion, as well as a mischaracterization of the underlying evidence. (*See* Doc. 40-1 ¶ 11; Doc. 41-12 at 3.) Plaintiff's cited evidence, an affidavit from her worker's compensation attorney Arthur

---

[2] (*See* Doc. 40-2 ¶¶ 18, 19, 20, 23, 28, 29, 37, 38, 39, 40.)
[3] (*See* Doc. 40-1 ¶¶ 1, 2, 3, 5, 7, 9, 10, 16, 17, 18, 22, 23, 25, 26, 27, 29, 30, 33, 40, 42)
[4] (*See* Doc. 40-1 ¶¶ 11, 13, 16, 29, 33, 42.)

- 6 -

Gage, opines that based on his experience benefits should have been paid in 30 days. (Doc. 41-12 at 3.) Mr. Gage did not opine that the Defendants are legally required to do so. (*See id*.) Plaintiff repeats this unsupported legal conclusion in Paragraph 13. (Doc. 40-1, ¶ 13.) These portions of the Plaintiff's statement of fact will be disregarded by the Court as they are unsupported, and inaccurate, conclusory legal opinions, as well as likely violations of Federal Rule of Civil Procedure 11(b).[5]

In Paragraph 16, Plaintiff asserts that Attorney Gage opines that "he has never had to send nor a duty to send a status report a Ms. Berrington incorrectly testified was required

---

[5] Federal Rule of Civil Procedure 11(b) states:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) **the claims, defenses, and other legal contentions are warranted by existing law** or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) **the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) **the denials of factual contentions are warranted on the evidence** or, if specifically so identified, are reasonably based on belief or a lack of information.

(emphasis added). As explained in more specific detail *infra*, Plaintiff's briefings are rife with both legal and factual contentions which are either unwarranted, incorrect, misleading, or unsupported. Should Plaintiff's counsel be found to have made these contentions knowingly, they may be subject to sanction. Fed. R. Civ. P. 11(c).

by law." (Doc. 40-1, ¶ 16.) The underlying cited evidence contradicts Plaintiff's assertion. First, Attorney Gage states "If [the insurance provider] requires a form they send the form to us to complete." (Doc. 41-12 at 3-4.) This contradicts Plaintiff's assertion as it reasonably implies that Attorney Gage has previously completed and returned an insurer-provided status report. Additionally, Attorney Gage never opines in his affidavit on the legal duty of the parties to submit status reports. (*See* Doc. 41-12 at 4.) In Paragraph 29, Plaintiff repeats these legal conclusions as fact. (Doc. 40-1 40-1, ¶ 29.) In sum, these verifiably inaccurate and misleading factual assertions proffered by Plaintiff are likely Rule 11(b) violations and will be disregarded by the Court.  Fed. R. Civ. P. 11(b)(3).

Further, upon review the Court does not interpret Plaintiff's Paragraphs 33 and 42 as containing improper legal conclusions. (*See* Doc. 40-1, ¶¶ 33, 42.)

Next, Defendants dispute the characterization of numerous factual assertions[6] in the Plaintiff's statement of facts. (Doc. 49 at 9-10.) Defendant purports that Plaintiff has misquoted deposition statements, as well as other various pieces of evidence. (*Id*. at 9.) While the Court must believe Plaintiff's **evidence** and draw all inferences in her favor, *Anderson*, 447 U.S. at 255 (emphasis added), it need not consider unsupported factual assertions contained in the Plaintiff's statement of facts, including mischaracterizations and unsupported conclusory allegations. Additionally, knowingly asserting facts which are unsupported by record evidence is a Rule 11(b) violation. *See* Fed. R. Civ. P. 11(b)(3). Accordingly, where the factual assertions found in Plaintiff's statements of facts are disputed by Defendants, the Court will consider Plaintiff's underlying evidence and draw all inferences which the evidence supports in Plaintiff's favor. To the extent the Plaintiff's factual assertions are unsupported by her underlying evidence, the Court will disregard such assertions.

Finally, Defendant objects to seven[7] of Plaintiff's exhibits attached to her statement of facts. (Doc. 49 at 10.) Defendant argues that each exhibit contains unauthenticated

---

[6]    (*See* Doc. 40-1, ¶¶ 1, 2, 3, 4, 6, 7, 8, 10, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 29, 30, 36, 37, 39, 40, 41.)
[7]    (*See* Docs. 40-5, 40-7, 40-8, 40-9, 40-11, 40-12, 40-13, 40-15.)

hearsay, and that Exhibit A contains hearsay within hearsay. (*Id*.) At the summary judgment stage, the Court must consider evidence that may be presented in a permissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003). Defendants do not explain how the objected to exhibits could not be authenticated by the time of trial, nor further expound on how Plaintiff relies on hearsay other than the instances previously addressed *supra*. Defendants request, at the Court's discretion, further briefing on the matter. (Doc. 49 at 11.) However, Defendants could have asked for a page extension to the immediate briefing to address these concerns but failed to do so prior to filing their reply. *See* LRCiv. 7.2(e). Accordingly, Defendants' objections to Plaintiff's exhibits will be overruled, and their request for further briefing will be denied at this time without prejudice.

### C. Relevant Facts[8]

Defendant Old Republic issued a workers' compensation insurance policy to Life Care Centers of America. (DSOF ¶ 2.) In the instant case, Defendant Gallagher acted as a third-party administrator acting on behalf of Defendant Old Republic to adjust Plaintiff's workers' compensation claim, and all claims handling decisions were made by Defendant Gallagher. (DSOF ¶¶ 2, 7.)

On July 22, 2022, Plaintiff was injured during her employment at Life Care Centers of America ("LCCA"). (DSOF ¶ 1; PSOF ¶ 1[9].) On August 22, 2022, Plaintiff reported the injury to her employer. (DSOF ¶ 4.) On August 29, 2022, Defendant Gallagher received a report from Plaintiff's employer that Plaintiff was alleging a shoulder injury which occurred during the course of her employment. (DSOF ¶ 3.) The employer's report stated that Plaintiff did not know what happened to cause her left shoulder to start hurting. (DSOF ¶ 4.) As recorded in Defendant Gallagher's claim notes, when questioned by an employer

---

[8]  Citations to Defendants' statement of facts (Doc. 36 at 2-5) appear as "(DSOF ¶ [ ].)." While Plaintiff filed a controverting statement of facts, she did not address all facts asserted by Defendants. (*See* Doc. 40-2.) Where Plaintiff controverted a fact included in this section, citations to Plaintiff's statement appear as "(PCSOF ¶ [ ].)." Where Plaintiff failed to dispute or otherwise controvert facts contained Defendants' statement, such facts will be deemed admitted for the purposes of summary judgment. Citations to Plaintiff's supplemental statement of facts (Doc. 40-1) appear as "(PSOF ¶ [ ].)."

[9]  Plaintiff does not cite record evidence to support her assertion. (*See* PSOF ¶ 1.)

representative, Plaintiff "state[d] she doesn't know what happened[,] her upper right[10] should[er] just started hurting." (DSOF ¶ 5; Doc. 35-3 at 2.) Later on August 29, 2022, Defendant Gallagher received a "Claimant's Initial Statement."[11] (*See* Doc. 35-3 at 3-4; Doc. 40-6 at 29-30.) In the statement, Plaintiff states that on July 22 or 23, 2022, she injured her left arm when she and two other individuals lowered a "very heavy-set lady" into a chair. (Doc. 35-3 at 4; Doc. 40-6 at 30.) The statement indicates Plaintiff's "[l]eft arm was bothering her and [she] thought it would get better." (*Id*.) The statement also indicates that Plaintiff sought medical treatment through her PCP on August 22, 2022, and did at that time report that it was a workers' compensation injury. (*Id*.) The statement identifies a single witness to the incident as "Larry," a C.N.A. (*Id*.) The statement indicates that Plaintiff last worked on August 14, 2022. (*Id*.) Plaintiff stated that she had a workers' compensation claim for a rotator cuff tear of her opposite shoulder. (DSOF ¶ 18.)[12] Plaintiff was also involved in a motor vehicle accident in 2021, made a claim, and received a settlement. (DSOF ¶ 19.)[13]

On August 30, 2022, Defendant Gallagher received an email from a representative of LCCA labeled in the claim notes as "Initial Employer Contact" as recorded in Defendant's claim file on September 15, 2022. (Doc. 40-6 at 31.) The LCCA representative stated "The facts aren't really clear. When I was asking her how it happened she kept saying she didn't know. She said she was doing her normal job duties and her shoulder just started hurting." (*Id*.) The LCCA representative stated, "Nobody witness[ed] [Plaintiff] getting injured." (*Id*.) The LCCA representative indicated that they questioned the claim because Plaintiff "doesn't have a time that it happened, [and] state[d] she wasn't doing anything

---

[10]    It is later determined that Plaintiff's left shoulder was injured relevant to this case.
[11]    It is unclear to the Court if the Claimant's Initial Statement was filled out by Plaintiff directly or if it is the recorded results of an interview.
[12]    Plaintiff disputes Defendant's fact arguing that the cited evidence does not support this assertion. (Doc. 40-2 ¶ 18.) Upon review of the evidence, Plaintiff is correct, but Plaintiff admits that she did have a prior workers' compensation claim on her other shoulder than the injury relevant to this case. (*See id*.)
[13]    Plaintiff disputes Defendant's fact arguing that the cited evidence does not support this assertion. (Doc. 40-2 ¶ 19.) Upon review of the evidence, Plaintiff is correct, but Plaintiff admits that she was involved in the referenced auto accident and received treatment at a hospital emergency room for back pain and a stomach injury. (*See id*.)

- 10 -

when her shoulder started hurting. (*Id*.) LCCA noted that it does not have any "light duty" nursing available. (PSOF ¶ 4.)

Defendant Gallagher's investigation revealed that in 2002 Plaintiff had a rotator cuff tear with surgical repair on her left shoulder. (DSOF ¶ 23.)[14] A claim index was returned that reflected a motor vehicle accident March 5, 2021, with injury to back, neck, head, and perhaps other areas of the body. (DSOF ¶ 25.)

On September 15, 2022, an entry in Defendant Gallagher's claim file indicates "a denial will be appropriate." (Doc. 40-6 at 33.) Defendant Gallagher questioned the legitimacy of the claimed injury based on Plaintiff's failure to timely report the injury, lack of a specific mechanism of injury, Plaintiff receiving treatment prior to reporting the claim, and Plaintiff's previous injuries and claims. (DSOF ¶ 6.)

On October 17, 2022, Defendant Gallagher, who had previously authorized an MRI for Plaintiff, sent a letter advising of the intent to deny Plaintiff's claim. (DSOF ¶ 29.)[15] The adjuster then initiated the process for the referral to an independent medical examination (IME). (DSOF ¶ 30.) On October 27, 2022, notice of claim was received from the Industrial Commission of Arizona (ICA). (DSOF ¶ 31.) Defendants timely filed a dispute on November 4, 2022. (DSOF ¶ 32.) On November 7, 2022, the Plaintiff filed a Request for Hearing before the ICA. (PSOF ¶ 1.)

On November 18, 2022, Plaintiff attended an IME with Dr. Patrick Bays, D.O. (DSOF ¶ 34.) Dr. Bays reported that Plaintiff alleged she was injured in June 2022. (DSOF ¶ 35.) Dr. Bays questioned whether Plaintiff had sustained a workplace injury but also stated she may have had a temporary exacerbation of a non-work-related claim. (DSOF ¶ 36.) On January 27, 2023, Defendant Gallagher accepted a temporary exacerbation in reliance on the IME. (DSOF ¶ 37.)

On April 27, 2023, Plaintiff was "awarded temporary total or temporary partial

---

[14]    Plaintiff disputes Defendant's fact indicating that her previous workers' compensation claim was due to an injury on her right shoulder but otherwise does not controvert the fact. (*See* Doc. 40-2 ¶ 23.)
[15]    Plaintiff disputes Defendants' assertion that authorizing the MRI is evidence of good faith on part of the Defendants but otherwise does not controvert the fact. (Doc. 40-2 ¶ 29.)

disability compensation benefits, as provided by law, from July 22, 2022 until their condition becomes medically stationary" by an ICA Administrative Law Judge. (*See* Doc. 40-5.) On May 5, 2023, Plaintiff's workers' compensation attorney, Arthur Gage, sent a letter to Defendants' workers' compensation counsel, Eric Slavin, providing Plaintiff's wage information. (*See* Doc. 40-7.) On June 9, 2023, Arthur Gage sent requests to Plaintiff's medical providers to forward billing statements for medical care that Plaintiff received related to her injury. (*See* Doc. 35-10.) On June 16, 2023, Defendant Gallagher requested wage information from LCCA, indicating that Defendant Gallagher required the information to set the AMW with the ICA. (Doc. 40-6 at 40.) Plaintiff did not provide monthly status reports or medical status reports (MSRs) to Defendants to verify that she was or was not earning any money during the period in question. (DSOF ¶¶ 38, 39.)[16] Defendants did not send or request MSRs from Plaintiff. (PSOF ¶¶ 38, 39.) The accrued benefits were paid on September 13, 2023. (DSOF ¶ 40; PSOF ¶ 40; [17] Doc. 35-8; PSOF ¶ 7.) Plaintiff received the desired surgery which was paid for by her health group insurance carrier and her co-pays were reimbursed by her health care provider. (DSOF ¶¶ 42, 43.)

Defendant Gallagher is not an insurance carrier and does not issue insurance policies. (DSOF ¶ 8.) Defendant Gallagher is not paid based on decisions to accept or deny claims; Gallagher received a flat fee per claim related to the claim handling of Plaintiff's claim for workers' compensation benefits. (DSOF ¶ 9.)  Defendant Gallagher does not share the company profits of Defendant Old Republic. (DSOF ¶ 10.) Defendant Gallagher did not solicit or sell the operative workers' compensation policy to Plaintiff's employer, nor receive a sales commission or premium for the sale of the workers' compensation policy to Plaintiff's employer. (DSOF ¶ 11.) Defendant Gallagher does not pay workers' compensation claim benefits from its own funds. (DSOF ¶ 12.) Defendant Gallagher is

---

[16]    Plaintiff controverts Defendants' factual assertion that it was Plaintiff's responsibility to provide such reports arguing that it was Defendant's duty to procure such information, but Plaintiff offers no evidence or legal support for this argument. (Doc. 40-2 ¶¶ 38, 39.) The question as to which party has the duty to gather the disputed information is not a question of fact, but a question of law, which is resolved below.

[17]    Plaintiff controverts Defendants' statement of fact by specifying the benefits were paid in September 2023. (*See* Doc. 40-2 ¶ 40.)

unaware of any separate claim activity undertaken by Defendant Old Republic in adjusting the claim made by Plaintiff. (DSOF ¶ 13.) Defendant Gallager performed claim adjusting services as a third-party administrator for Defendant Old Republic. (DSOF ¶ 15.) Plaintiff has never spoken to or communicated directly with Defendant Old Republic. (DSOF ¶ 20.)[18]

### D. Issues with the Parties' Briefing

As a preliminary matter, the Court addresses the condition of Parties' briefing in this matter. Within their filings both Parties make inaccurate citations to their own factual statements or make citations to materials not contained in the record. In Defendants' Motion, the Defendants make citation to their statement of facts, where it appears the citation should be to the complaint. (Doc. 35 at 7:18-19 (asserting the ICA dispute was timely filed on November 4, 2022, and citing "SOF 18;" *see* Doc. 35 at 4 ¶ 18 ("Plaintiff had a prior workers' compensation claim for a rotator cuff tear."), *compare with* Doc. 1-1 ¶ 18 ("On November 4, 2022, Defendant…issued a Notice of Claim Status, denying Plaintiff's claim.") .) Further, Defendants make citations to evidentiary materials they did not include in their filings. (*See* Doc. 35 at 5 ¶ 40 (citing Ex. 11 at 116:20-21).)[19]  The Court has also found instances of Defendants' misciting their own statement of fact. (*See* Doc. 35 at 16:27 (citing "SOF 24-25").) However, these factual assertions are found elsewhere in Defendants' fact section. (*See* DSOF ¶¶ 38, 39.)

In her Response, Plaintiff does not cite a single case, statute, or any other form either of controlling or persuasive legal authority in support of her bad faith insurance claim argument, nor to explain to any extent why her factual assertions create a material dispute of fact which would allow her to survive summary judgment based on the evidence she has provided. (*See* Doc. 40 at 2-13.) Further, Plaintiff's Response contains numerous factual

---

[18]   Plaintiff disputes Defendant's fact arguing that she did communicate with Defendant Old Republic through its agents. (Doc. 40-2 ¶ 20.) The agents Plaintiff lists to support the assertion are Paula Arnett, an employee of Defendant Gallagher, and Eric Slavin, an attorney who represented the Defendants during the relevant ICA hearings. (*See id*.) Therefore, is uncontroverted that Plaintiff never spoke or communicated with Defendant Old Republic directly.
[19]   The cited deposition page is not included in the Defendant's attachments (*See* Doc. 35-12.)

and legal assertions which she has chosen not to support with *any* citation. (*See id*.)[20] Where Plaintiff did choose to include citations in her Response, she repeatedly and improperly cites her statement of facts for conclusory legal opinions which are not supported by any identified statutes or case law. (*See id*.)[21]  The third and ultimately most troublesome issue the Court faced when reviewing Plaintiff's Response is that Plaintiff cites to paragraphs of her statement of facts for factual assertions which are *not found in the cited paragraphs, nor anywhere else, in her statement of facts*. (*See id*.)[22] Additionally, upon further review of Plaintiff's underlying evidence, *most if not all the factual assertions in Plaintiff's Response are not only unsupported by her own evidence but directly contradicted*.[23] (*See*

[20]    For a factual example, Plaintiff asserts that Defendant's 30(b)(6) representative "testified at her deposition that the delay in paying Plaintiff was primarily due to a lack of Monthly Status Reports (MSR) in the Defendant's claim file." (Doc. 40 at 7.) Upon review of the representative's

[21]    For example, Plaintiff asserts in her Response "it is the responsibility of the insurance company…to send out [MSRs][,]" and cites to her statement of fact, which in turn cites to the opinion of Mr. Gage, which in turn does not even support this legal assertion. (Doc. 40 at 8; *see* Doc, 41-12 at 4.) In the same paragraph, Plaintiff asserts "it is the duty of the carrier to pay wages within 30 days[,]" and again cites to paragraph six of her statement of facts. (Doc. 40  at 8.) Paragraph six reads "Defendants wrote in the case notes after 'Complete 3-pt contacts by 08/29/22' that this was completed and documented. As part of that contact they were to interview any witness, but never did so." (PSOF ¶ 6.) Nowhere in the Response does Plaintiff provide any support for these legal conclusions. (*See* Doc. 40.)

[22]    For example, Plaintiff asserts in her Response that the existence of a witness was contained in doctor's reports as well as testified to during her ICA hearing. (Doc. 40 at 11.) For support she cites the first paragraph in her statement of facts. (*Id*. (citing PSOF ¶ 1).) Paragraph one of Plaintiff's statement of facts does not include any mention of a witness, nor doctor reports. (*See* PSOF ¶ 1.) The only doctor's report in the record does not mention any witnesses. (*See* Doc. 37.) Further, where Plaintiff does recount testimony of the ICA hearing in her statement of fact she also does not mention having testified to the existence of any witnesses. (PSOF ¶¶ 9, 10.) Finally, neither the ICA award nor the affidavit of Mr. Gage, cited by the relevant paragraph of the statement of facts, includes any assertion as to the existence of a witness. (*See* Docs. 40-5, 40-12.)

[23]    For example, Plaintiff asserts that  her counsel's paralegal, Lauretta Meyers, contacted Defendant's representative, Paula Arnett, seven times between May 19 through July 11, 2023, and asserts that Defendant never received an answer. (PSOF ¶ 13.) However, the first sentence in an email sent on May 25, 2023, as provided by Plaintiff, from Meyers to Arnett reads "Thank you so much Paula for talking with me this morning." (Doc. 41-5 at 9.)

An additional example is that Plaintiff contends in her Response that "the claim was initially denied, according to Defendants, was due to lack of witness as to how and [Plaintiff] was injured (sic)." (Doc. 40 at 11.) The cited portion of her statement of fact does not support this assertion. (*See* PSOF ¶ 6 ("Defendants wrote in the case notes after 'Complete 3-pt contacts by 08/29/22' that this was completed and documented. As part of that contact they were to interview any witness, but never did so." (internal citations omitted)).) The reason Defendants denied Plaintiff's claim, uncontroverted by Plaintiff, was "…the legitimacy of the claimed injury based on Plaintiff's failure to timely report the

*id*.) If these numerous verifiably incorrect legal and factual assertions were made knowingly by Plaintiff, they are Rule 11(b) violations. *See* Fed. R. Civ. P. 11(b)(2)-(4).

### E. Count One – Insurance Bad Faith

In Plaintiff's Count One, she alleges that Defendant Old Republic breached the implied covenant of good faith and fair dealing when processing Plaintiff's claim. (Doc. 1-1 at 29.) Defendant moves for summary judgment, arguing that Plaintiff failed to show the necessary elements to prevail on a bad faith claim and therefore it is entitled to judgment in its favor as a matter of law. (Doc. 35 at 14.) For the following reasons, the undersigned recommends that the district court grant summary judgment in favor of Defendant Old Republic as to Count One.

#### 1. *Legal Standard*

An insurer breaches the implied covenant of good faith and fair dealing when it, "intentionally denies, or fails to process or pay a claim, without a reasonable basis." *Zilisch v. State Farm Mut. Auto. Ins*., 196 Ariz. 234, 237 (2000) (quoting *Noble v. Nat'l Am. Life Ins.*, 128 Ariz. 188, 190 (1981)). Arizona law employs a two-part test for bad faith claims. *Christie's Cabaret of Glendale LLC v. United Nat'l Ins.*, 562 F.Supp.3d 106, 121 (D. Ariz. 2021).

Part one is an objective test, asking "whether the insurer acted unreasonably toward the insured." *Id*. Thus, if the actions taken on the part of the insurance company were reasonable, the insurance company will not be found to have acted in bad faith. *Trus Joist Corp. v. Safeco. Ins. Co.*, 153 Ariz. 95, 104 (Ct. App. 1986). In determining whether the insurance company acted reasonably in a case premised on failure to pay benefits, the Court considers whether the insurer's liability under the policy was "fairly debatable." *See Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 508 (1992). Accordingly, under the first prong, Defendants can challenge claims that are fairly debatable without having acted in bad faith. *See Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 260 (1990).

---

injury, lack of a specific mechanism of injury, Plaintiff receiving treatment prior to reporting the claim, and Plaintiff's previous injuries and claims[,]" not the lack of witnesses. (*See* DSOF ¶ 6.)

Part two is a subjective test, considering "whether the insurer acted knowingly or with reckless disregard as to the reasonableness of its actions." *Christie's Cabaret*, 562 F.Supp.3d at 121. At the summary judgment stage, the subjective prong asks if sufficient evidence exists from which a reasonable juror "could conclude that in the investigation, evaluation, and processing of [a] claim, the insurer...either knew or was conscious of the fact that its conduct was unreasonable." *Finkelstein v. Prudential Ins. Co. of Am.*, 709 F.Supp.3d 828, 845 (D. Ariz. 2024). An insurer's belief is normally a question of fact determined by a jury. *Temple v. Hartford Ins. Co. of Midwest*, 40 F.Supp.3d 1156, 1166 (D. Ariz. 2014). But "if the insured offers no significantly probative evidence that calls into question the insurer's subjective belief[,]...the court may rule on the issue as a matter of law." *Id*.

### 2. *Analysis*

Here, Defendant Old Republic moves for summary judgment as to Count One on two grounds. First, Defendant argues that because there was a reasonable basis for denying Plaintiff's claim, it is entitled to summary judgment as a matter of law. (Doc. 35 at 14.) Next, Defendant argues that because Plaintiff has failed to introduce evidence of consciously unreasonable conduct on part of the Defendants, she has failed to prove an essential element of her bad faith claim, and therefore it is entitled to summary judgment as a matter of law. (Doc. 35 at 16-17.)

In turn, Plaintiff focuses on two specific parts of the claim process where she asserts the actions of the Defendants show they acted in bad faith. First, Plaintiff asserts Defendant Gallagher[24] failed to conduct an adequate investigation because a witness was not interviewed before the claim was denied. (Doc. 40 at 11-12.) Second, Plaintiff asserts Defendant Gallagher's delay of payment to Plaintiff was a result of bad faith. (Doc. 40 at 7-12.) For the following reasons, the undersigned recommends that summary judgment be granted in favor of Defendant Old Republic as to Count One of the Complaint.

---

[24] It is not disputed that Defendant Gallagher, as third party claim administrator, was acting as an agent of Defendant Old Republic, and therefore Defendant Old Republic can be held liable for the actions of Defendant Gallagher. (*See* Docs. 35, 49.)

i.       Failure to Adequately Investigate

Defendants assert that because Plaintiff's entitlement to workers' compensation benefits was fairly debatable, her bad faith claim fails as a matter of law. (Doc. 35 at 14-17; Doc. 49 at 4-5.) However, "fair debatability cannot be raised where the insurer failed to make an adequate investigation." *Rawlings v. Apodaca*, 151 Ariz. 149, 156 (1986) (citing *Farr v. Transamerica Occidental Life Ins.*, 699 P.2d 376 (Ariz. Ct. App. 1984)). A reasonable insurer must conduct a "neutral and detached investigation." *See Linthicum v. Nationwide Life Ins.*, 723 P.2d 703, 712 (Ariz. Ct. App. 1985). Accordingly, "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch*, 196 Ariz. at 238. But "there are times when the issue of bad faith is not a question for the jury." *Aetna Cas. & Sur. Co. v. Superior Ct.*, 161 Ariz. 437, 440 (Ct. App. 1989). Because "An insurance company's failure to adequately investigate only becomes material when a further investigation would have disclosed relevant facts." *Id.*

Plaintiff argues that because Defendant Gallagher did not interview Larry, its investigation was per se unreasonable. (Doc. 40 at 11-12.) Plaintiff offers no legal support for her position. (*See id.*) Plaintiff asserts "[a] reasonable jury could determine that this was just plain deliberate lack of procedure and process of the claim." (*Id.*) Plaintiff also contends that it was customary for Defendant to interview witnesses to an injury, "especially when the claim is contested." (*Id.*)[25] However, "negligence alone is insufficient to impose liability on an insurer for the tort of bad faith." *Trus Joist Corp.* 153 Ariz. at 104 (Ct. App. 1986).

Here, Plaintiff has "not advised this court, specifically or otherwise, concerning what additional pertinent facts would have been determined by" Defendant interviewing Larry. *Aetna Cas. And Sur. Co.*, 161 Ariz. At 440. Further, Plaintiff "ha[s] not shown that any further investigation would have led to the discovery of relevant facts establishing

---

[25]       Plaintiff provides no citation to record evidence for this assertion.

coverage." *Henrickson v. Am. Fam. Ins. Grp.,* 2008 WL 11446832, at *6 (D. Ariz. Mar. 21, 2008). While Plaintiff contends "Part of the reason the claim was initially denied, according to the Defendants, was due to a lack of witnesses," (Doc. 40 at 11), she provides no evidence that this assertion is factually accurate. The reasons Defendant denied Plaintiff's claim are uncontroverted: "Plaintiff's failure to timely report the injury, lack of a specific mechanism of injury, Plaintiff receiving treatment prior to reporting the claim, and Plaintiff's previous injuries and claims" (DSOF ¶ 6.) Plaintiff does not—to any extent—explain how interviewing Larry would have led to the discovery of facts relevant to the uncontroverted reasons Defendant Gallagher denied her claim. Plaintiff does not otherwise introduce any probative evidence that the uncontroverted reasons for Defendant's denial of her claim were unreasonable.

In this case, Defendant investigated its coverage of Plaintiff's injury claim by ordering an MRI and an IME. (DSOF ¶¶ 29, 30.) Defendants eventually accepted Plaintiff's claim pursuant to the result of the IME, namely, that she suffered a temporary exacerbation to a non-work-related claim. (DSOF ¶ 36.) Plaintiff does not explain, nor even contend, that Defendant interviewing Larry would have resulted in a different outcome to the investigation. While the ICA ultimately found against the Defendant, this is "not important to the resolution of the bad faith issue." *Aetna Cas. And Sur. Co.*, 161 Ariz. At 440.

Accordingly, Plaintiff has failed to show that Defendants investigation was objectively unreasonable.

ii.     Delay of Payment

In determining whether the insurance company acted reasonably in a case premised on the unreasonable delay in paying benefits, the Court first considers whether such delays were objectively unreasonable under the circumstances. *See Wilke v. Transportation Ins. Co.*, 2019 WL 4529618, at *4 (D. Ariz. July 16, 2019) (citing *Borland v. Safeco Ins. Co.*, 147 Ariz. 195 (Ct. App. 1985)).

Here, Plaintiff was awarded "temporary total or temporary partial disability compensation benefits" by the ICA on April 27, 2023. (Doc. 40-5 at 6.) But Defendant did

not pay Plaintiff benefits until September 13, 2023. (Doc. 40 at 6.) Accordingly, at this summary judgment stage, the Court must determine if Plaintiff has provided probative evidence which, when taking such evidence in the light most favorable to Plaintiff, shows: (1) Defendant Gallagher acted objectively unreasonable during the nearly five-month delay between the award and payment of benefits; and (2) that Defendant Gallagher was conscious of the fact that its conduct was unreasonable. *Finkelstein*, 709 F.Supp.3d at 845.

"Disability" under Arizona's workers' compensation scheme is related to an individual's "earning capacity," not to an individual's physical health or injury thereto. *Garcia v. Regis Corp.*, 2010 WL 1408825, *2 (D. Ariz. April 7, 2010); *see Alsbrooks v. Indus. Comm'n of Ariz.*, 118 Ariz. 480, 578 P.2d 159, 163 (1978) ("We hold that when the statute says 'disability,' it means earning capacity disability ...."); *R.G. Roth Const. Co. v. Indus. Comm'n of Ariz.*, 126 Ariz. 147, 613 P.2d 307, 309 (Ct. App. 1980) (applying *Alsbrooks* definition of disability to A.R.S. § 23–1044). Thus, in Arizona workers' compensation claims, the Industrial Commission is concerned with physical injury or disability only to the extent that it affects an employee's ability to earn a wage. *See Savich v. Indus. Comm'n of Ariz.*, 39 Ariz. 266, 5 P.2d 779, 780 (Ariz.1931) ("The word 'disability' as used in our Compensation Act, does not mean disablement to perform the particular work petitioner was doing at the time of his injury, but refers to injuries which result in impairment of earning power generally.... It applies to earning power and not to inability to do a certain class of work."). This is codified in the relevant Arizona statute: "For temporary partial disability there shall be paid during the period thereof sixty-six and two-thirds percent of *the difference between wages earned before the injury and the wages that the injured person is able to earn thereafter*." A.R.S. § 23-1044(A) (emphasis added). Accordingly, to establish the AMW not only is wage information required but also information regarding the "the difference between wages earned before the injury and the wages that the injured person is able to earn thereafter," i.e. the Plaintiff's "work status." *Id*. As the injured worker, this is the Plaintiff's burden to establish. *Douglas v. Indus. Comm'n*, __ P.3d __, 2025 WL 3768013, *2 (Ariz. Ct. App. Dec. 30, 2025) (citing *Zapien*

*v. Indus. Comm'n*, 12 Ariz.App. 334, 336 (1970)).

Indeed, Plaintiff concedes that she was required to provide to Defendant Gallagher "whatever information is deemed relevant by the carrier." (Doc. 40 at 5.) Plaintiff then argues that it is undisputed that Defendant Gallagher had all the relevant information to set the AMW, namely, "that she was earning $34 an hour working 40 hours a week" by September 15, 2022. (*Id*.) While it is undisputed that on August 29, 2022, Plaintiff informed Defendant Gallagher that she was assigned a modified duty work status, (DSOF ¶ 38; PCSOF ¶ 38; Doc. 35-3 at 4; Doc. 40-6 at 30), there is no evidence in the record that Plaintiff, or anyone else, provided her work status to Defendants after that date. Accordingly, this Court finds that Plaintiff, having the burden to do so, failed to provide the necessary information to Defendants in order for the AMW to be set. *See Douglas*, 2025 WL 37681013, *2.

Plaintiff argues repeatedly that "Defendants should have paid [Plaintiff's] wages within 30 days of the [ICA] decision." (*See e.g.* 40 at 4) Plaintiff cites Mr. Gage's affidavit, but as explained above, this is a conclusory legal opinion. *See supra* III.B. Upon further research and review, the Court cannot find any legal support for this assertion, nor invented deadline. *See* A.R.S. § 23-901, *et seq.*

Still, Plaintiff asserts that Defendant's delay in paying benefits was unreasonable and identifies three relevant factual issues for trial. (*See* Doc. 40 at 7-12.) First, Plaintiff argues that Defendant committed bad faith by not requesting Monthly Status Reports ("MSRs") from Plaintiff. (*Id*. at 7.) It is undisputed that Defendant did not send MSRs to Plaintiff. In turn Plaintiff does not explain how then this could be a dispute of material fact meant for trial. However, as discussed above, it is Plaintiff's burden to establish the AMW, regardless of what form such information is presented to the Defendants. *See Douglas*, 2025 WL 37681013, *2. As Plaintiff points out, Defendant's claim notes dated June 28, 2023 direct that an adjuster "Request work status from current providers so current indemnity can be addressed." (Doc. 40-6 at 43.) Plaintiff does not explain how it would be objectively unreasonable, nor show bad faith, that Defendant would request the

information, which she as the injured has the burden to provide by law, directly from her medical providers. Plaintiff repeatedly asserts that it is the duty of the Defendant to issue MSRs but does not provide any legal support for that assertion. (*See e.g.* Doc. 40 at 8.) Accordingly, Plaintiff has failed to show that Defendant acted objectively unreasonably by not having information which Plaintiff had the burden to provide.

Further, Plaintiff provides no probative evidence that Defendant knew or should have known that it was acting in bad faith when it did not issue the benefit payment prior to establishing the AMW. Plaintiff makes conclusory allegations that because Defendant eventually issued the benefits without the work status information, information Plaintiff had the burden to provide, Defendant's bad faith can be presumed. (Doc. 40 at 9.) Plaintiff offers again offers no legal support for this argument. "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera*, 331 F.3d at 1078.

Next, Plaintiff asserts that because Defendants "ignored their own claims file" they acted in bad faith. (Doc. 40 at 10.) Again, Plaintiff does not identify a specific disputed fact, material to the case, which would be necessary for trial. Here, Plaintiff instead argues that because wage calculations can be found in the claim file, Defendant should have issued benefits. (*Id*.) As explained above, under Arizona statute the wage calculation is offset by "the difference between wages earned before the injury and the wages that the injured person is able to earn thereafter." A.R.S. § 23-1044(A). As also explained above, it is the Plaintiff's burden to provide this information. *See Douglas*, 2025 WL 37681013, *2. Accordingly, Plaintiff has failed to establish that Defendant acted objectively unreasonably by calculating the maximum AMW in its claim notes prior to issuing the payment of benefits.

Finally, Plaintiff asserts that because Defendant did not establish the AMW, it acted in bad faith. (Doc. 40 at 12.) This is, again, not a disputed fact, nor material to the case. As explained above, it is the Plaintiff's burden to establish the AMW. *See Douglas*, 2025 WL 37681013, *2. Also as explained above, Defendant did not have the work status information required to calculate or confirm the AMW pursuant to statute. *See* A.R.S. §

23-1044(A).

### iii.    Conclusion

Here, the Plaintiff has failed to offer any probative evidence that Defendant acted objectively unreasonably while investigating or processing her claim and has failed to provide probative evidence that Defendants knew or should have known that they were acting unreasonably. *See Christie's Cabaret*, 562 F.Supp.3d at 121. Accordingly, Defendants are entitled to summary judgment as a matter of law as to Count One of the Complaint because Plaintiff has failed to provide evidence to support an essential element of her claim. *Celotex*, 477 U.S. at 322. Therefore, the undersigned recommends the district court grant summary judgment to the Defendants as to Count One.

### F.   Count Two – Aiding and Abetting

In Plaintiff's Count Two, she alleges that Defendant Gallagher aided and abetted Defendant Old Republic's bad faith against Plaintiff by substantially assisting or encouraging Old Republic's bad-faith conduct. (Doc. 1-1 at 30.) Defendant Gallagher moves for summary judgement arguing that Plaintiff's aiding and abetting cause of action fails as a matter of law. For the following reasons, the undersigned finds that Plaintiff's Count Two fails as a matter of law, and summary judgment should be granted in favor of Defendant Gallagher.

### 1.  *Legal Standard*

In Arizona, to prevail on a claim against aiding and abetting Plaintiff must provide evidence to establish three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 485 (2002), as corrected (Apr. 9, 2002). "Because aiding and abetting is a theory of secondary liability, the party charged with the tort must have knowledge of the primary violation[.]" *Id*.

- 22 -

Further, in order "for an aiding and abetting claim against an adjuster or third-party to be viable, 'the plaintiff must allege some action taken separate and apart from the facts giving rise to a claim against the insurer.'" *Aguado v. XL Insurance*, 721 F.Supp.3d 811, 816 (D. Ariz. 2024) (quoting *Whitcomb v. Twin City Fire Ins. Co.*, 2020 WL 6699499, at *3 (D. Ariz. Nov. 13, 2020), *see Centeno v. Am. Liberty Ins. Co.*, 2019 WL 568926,  at *3 (D. Ariz. Feb. 12, 2019) ("Numerous cases in this District reinforce the determination that in order for Plaintiff's aiding and abetting claim…to survive, she must allege some action taken by these defendants separate and apart from the facts giving rise to the claim against ALIC.");  *Lambert v. Liberty Mut. Fire Ins. Co.*, 2014 WL 5432154, at *3 (D. Ariz. Oct. 24, 2014) ("[T]he plaintiff must not only allege actions that constitute a breach of the insurer's duty, but also separate actions performed by the adjuster that substantially assisted or encouraged the breach."); *Rogers v. Emps. Ins. Co. of Wausau*, 2019 WL 13198123, at *2 (D. Ariz. July 1, 2019) (same); *Swift v. Wesco Ins.*, 2018 WL 11323085, at *2 (D. Ariz. Sept. 24, 2018) (same); *Kubli v. AmTrust Ins. Co. of Kan.*, 2019 WL 13196105, at *2 (D. Ariz. Oct. 30, 2019) (same); *Midtown Hotel Grp. v. Selective Ins. Co. of Am.*, 2023 WL 3603677, at *8 (D. Ariz. May 23, 2023) (same); *see also Counts v. Tech. Ins.*, 2019 WL 13195132, at *2 (D. Ariz. July 12, 2019) ("There must be some distinction between the primary tort and the aiding and abetting conduct. Aiding and abetting is derivative in the sense that absent a predicate primary tort, there can be no claim for aiding and abetting which is a secondary form of liability.")

2. *Analysis*

Plaintiff has failed to show a distinct action taken by Defendant Gallagher which is separate and apart from the facts giving rise to the bad faith claim against Defendant Old Republic and therefore Count Two fails as a matter of law. Here, all allegations made against Defendant Old Republic for breach of the covenant of good faith and fair dealing are premised on it being vicariously liable for the actions of its agent, Defendant Gallagher, as third-party administrator. (*See* Doc. 1-1 at 23-31.) In fact, Plaintiff admits that "her bad faith claim is founded entirely on the conduct of Gallagher Basset, not Old Republic."

(Doc. 40 at 16.) Accordingly, Plaintiff has failed to produce any probative evidence which would allow a reasonable jury to infer that Defendant Old Republic took any "distinct" tortious action "separate and apart" from the conduct of Defendant Gallagher—which admittedly is the sole basis of her bad faith claim—an essential element of an aiding and abetting claim. *Aguado*, 721 F.Supp.3d at 816. Therefore, summary judgment must be entered in favor of Defendant Gallagher as to Count Two. *See Celotex*, 477 U.S. at 322-23. ("[T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Plaintiff argues first that Defendant Old Republic can be held liable for Defendant Gallagher's breach, because Old Republic has a non-delegable duty to act in good faith. (Doc. 40 at 15 (citing *Walter v. Simmons*, 169 Ariz. 229 (1991)).) This is an accurate statement of law. However, Plaintiff does not explain how that supports her Count Two, an aiding and abetting claim *against Defendant Gallagher*, not a bad faith claim on the theory of vicarious liability against Defendant Old Republic.

Next, Plaintiff argues that courts in the District of Arizona have held that the existence of a principal-agent relationship between defendants does not, on its own, defeat an aiding and abetting claim. (Doc. 40 at 16 (citing *Morrow v. Boston Mut. Life Ins. Co.*, 2007 WL 3287585, at *6 (D. Ariz. Nov. 5, 2007), *Inman v. Wesco ins. Co.*, 2013 WL 2635603, at * 4 (D. Ariz. June 12, 2013)).) While this is an accurate statement of law, it is completely irrelevant to the instant motion. Plaintiff fails to address any actual element of her aiding and abetting claim, or most importantly whether she has probative evidence that Defendant Old Republic took a "distinct" tortious action "separate and apart" from the conduct of Defendant Gallagher. *See Centeno*, 2019 WL 568926, at *2-3 (Noting "that an agent can be liable for aiding and abetting a principle's breach of the duty of good faith and fair dealing" but for the claim "to survive, [plaintiff] must allege some action taken by [the agent] separate and apart from the facts giving rise to the claim against [the principal].")

- 24 -

Accordingly, the undersigned recommends the district judge enter summary judgement in favor of Defendant Gallagher as to Count Two of the Complaint.

### IV.    Motion to Strike Testimony

Defendants filed a Motion to Strike Testimony of Plaintiff's Expert, Elliott Flood. (Doc. 34.) Defendants argue that Mr. Flood lacks sufficient qualifications, his opinions lack sufficient basis and foundation, and his testimony is neither reliable nor relevant. (*Id.* at 1.) Upon review of Plaintiff's filings as they relate to the immediate motion for summary judgment, Plaintiff does not rely on the testimony of Mr. Flood for any reason. (*See* Docs. 40, 40-1, 40-2.) Therefore, because this order recommends summary judgment be granted in favor of the Defendants, the undersigned recommends denying Defendants' Motion to Strike Testimony as moot.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

- 25 -

**RECOMMENDATION**

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the district court, after its independent review, enter an order **ADOPTING** this Report and Recommendation, **GRANTING** Defendants' Motion for Summary Judgment (Doc. 35), **DENYING** Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment (Doc. 42) with prejudice, and **DENYING** Defendants' Motion to Strike Testimony (Doc. 34) as moot.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply shall be filed unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). If objections are filed, the parties should use the following case number: **CV-24-440-TUC-SHR**.

Dated this 2nd day of March, 2026.

_____
Honorable Jacqueline M. Rateau
United States Magistrate Judge